UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| ONE OR MORE UNKNOWN PURCHASERS OF SECURITIES OF WIMM-BILL-DANN FOODS OJSC, | ECF |
| Defendants. | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint alleges as follows:

### SUMMARY OF THE ACTION

1. This is an insider trading case involving highly profitable and suspicious purchases of the securities of Wimm-Bill-Dann Foods OJSC ("WBD"), a Russian company whose American Depositary Receipts ("ADRs") trade on the New York Stock Exchange ("NYSE"). The unlawful purchases of WDB securities were made through an account at SG Private Banking (Suisse) SA ("SG Private Banking") by one or more unknown purchasers ("Unknown Purchasers" or "Defendants"). On December 2, 2010, PepsiCo, Inc. ("Pepsi") announced that it intended to acquire a sixty-six (66) percent interest in WBD at a large premium to the prevailing share price. There was no public information available concerning the contemplated acquisition before the Unknown Purchasers bought WDB securities.

2. Following the December 2nd public announcement of the contemplated Pepsi acquisition of WBD, the market price of WBD ADRs increased by 28 percent. As a result, the Unknown Purchasers are in a position to realize total profits of approximately $2.7 million from the sale of the ADRs. (The potential profit has been calculated assuming that the sales were effected on the day of the announcement, December 2, 2010, and using Bloomberg Pricing for the WBD ADRs' closing price for the day.)

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to Sections 21(e), 21A, and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa]. The Defendants have directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

4. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions and courses of business constituting the violations occurred in the Southern District of New York.

5. The Defendants will, unless restrained and enjoined, continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## DEFENDANTS

6. The Defendants, the Unknown Purchasers, made suspicious purchases of a large number of WBD ADRs through an omnibus account known as SG Private Banking (Suisse) SA Sub-Account number 751-99489 ("SG Private Banking Omnibus Account").

## RELEVANT ENTITIES

7. **Wimm-Bill-Dann Foods OJSC** is a Russian corporation with its corporate headquarters in Moscow. WBD manufactures and sells dairy and fruit juice products. WBD's American Depositary Shares are registered with the Commission pursuant to Section 12(b) of the Exchange Act and are evidenced by ADRs that trade on the NYSE under the ticker symbol "WBD."

8. **PepsiCo, Inc.** is a North Carolina corporation with its headquarters in Purchase, New York that manufactures, markets, and sells various foods, snacks, and carbonated and non-carbonated beverages worldwide. The common stock of Pepsi is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the NYSE under the ticker symbol "PEP."

9. **SG Private Banking (Suisse) SA** operates as a subsidiary of Societe Generale Bank & Trust SA and is based in Geneva, Switzerland. It has a branch in Zurich with representative offices in New York, New York. The company specializes in asset management services.

10. **Instinet LLC** has offices in New York and provides electronic trading services.

11. **Instinet Europe Limited** has offices in Zurich, Switzerland and is a foreign affiliate of Instinet LLC.

12. **Brown Brothers Harriman & Co.** is a privately held financial services firm located in New York and registered with the Commission as a broker-dealer.

## FACTUAL ALLEGATIONS

13. Between November 29 and December 1, 2010, the Unknown Purchasers bought 400,000 WBD ADRs in an account maintained at SG Private Banking located in Geneva, Switzerland. The purchase orders were placed from the SG Private Banking account for 107,500 ADRs on November 29, 2010; for another 132,500 ADRs on November 30, 2010; and for an additional 160,000 ADRs on December 1, 2010.

14. The purchase orders were routed through an Instinet Europe Limited ("Instinet Europe") account, and from that account through an Instinet, LLC ("Instinet USA") account. Brown Brothers Harriman & Co. ("Brown Brothers") is acting as custodian of the shares. Neither the records at Instinet USA nor Brown Brothers identify the account holders or beneficial owners of, or even the name on, the SG Private Banking account that purchased the WBD ADRs.

15. The purchase of 107,500 ADRs on November 29th comprised 23% of the total trading volume of WBD ADRs that day. The 132,500 WBD ADRs purchased on November 30th comprised 13 percent of the total trading volume of WBD ADRs that day. The December 1st purchase of 160,000 WBD ADRs comprised 21 percent of the total trading volume of WBD ADRs that day.

16. On Thursday, December 2, 2010, before the opening of the New York securities markets, Pepsi announced its intention to acquire 66 percent of WBD for $3.8 billion ("Public Announcement"), pending the required government approvals. The $3.8 billion price for 66 percent implies a total enterprise value of $5.4 billion. Pepsi announced that it will offer to acquire the remaining shares of WBD after the first acquisition is completed "at such time and on

4

terms as are mandated by Russian law." The $33 per-share price represents a 32 percent premium on the 30-day average trading price of WBD ADRs.

17. After the Public Announcement and the opening of the New York securities markets, the price of WBD ADRs topped the list of Biggest Percentage Gainers among common stocks on the NYSE at midday and rose approximately 28 percent for the day.

18. As a result of the price increase, the Unknown Purchasers are in a position to realize total profits of approximately $2.7 million from the sale of the ADRs. As of December 7, 2010, the Unknown Purchasers WBD ADRs are being held by Brown Brothers.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Promulgated Thereunder

19. Paragraphs 1 through 18 are realleged and incorporated by reference.

20. Upon information and belief, at the time the Defendants purchased WBD ADRs as set forth above, they were in possession of material, nonpublic information about Pepsi's intent to acquire WBD. The Defendants (a) knew, or recklessly disregarded the fact, that their trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of WBD, or to the source from whom they received the material, nonpublic information; and/or (b) knew or should have known that material, nonpublic information about the contemplated acquisition had been communicated to them, in breach of a fiduciary or similar duty of trust and confidence.

21. Upon information and belief, any and all material nonpublic information that defendants received concerning WBD, as set forth above, was disclosed in exchange for a personal benefit that benefited the communicator of such information.

22. By reason of the conduct described above, the Defendants, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

23. By reason of the foregoing, the Defendants, directly and indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court enter judgment:

(a) permanently enjoining the Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

(b) ordering the Defendants to disgorge all illicit trading profits resulting from conduct alleged in this Complaint, along with prejudgment interest thereon;

(c) ordering the Defendants to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

(d) granting such other and further relief as the Court deems just and appropriate.

Dated: December 8, 2010

Of Counsel:

Scott W. Friestad
David Frohlich

Respectfully submitted,

Paul W. Kisslinger (PK0764)
Robert Dodge
Robyn R. Bender
Joel S. Vengrin
Attorneys for Plaintiff
Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, D.C. 20549-4010
Telephone: (202) 551- 4427 (Kisslinger)
Facsimile:   (202) 772-9246 (Kisslinger)